[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Howson v. Edmonson*, Slip Opinion No. 2024-Ohio-4619.]

<u>NOTICE</u>

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-4619

THE STATE EX REL. HOWSON *v*. EDMONSON.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Howson v. Edmonson*, Slip Opinion No. 2024-Ohio-4619.]**

*Mandamus—Public-records requests—Relator failed to prove by clear and convincing evidence that records custodian failed to timely respond to his public-records requests—Relator's public-records requests were overbroad and did not identify with reasonable clarity the records he was seeking—Writ and requests for statutory damages, court costs, and attorney fees denied.*

(No. 2023-1105—Submitted July 9, 2024—Decided September 25, 2024.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, BRUNNER, and DETERS, JJ.

**Per Curiam.**

{¶ 1} Relator, David R. Howson, seeks a writ of mandamus directing respondent, Charlsie Edmonson, to produce requested public records. He also seeks awards of statutory damages, court costs, and attorney fees. The two main issues in this case are whether Edmonson responded to Howson's requests before Howson filed this action and whether three of those requests were overbroad. As to the first issue, Howson has not proven by clear and convincing evidence that Edmonson failed to respond before this action was filed. As to the second issue, the requests in question were overbroad. We deny the writ as well as Howson's requests for statutory damages, court costs, and attorney fees.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} In April 2023, Howson was an inmate incarcerated at the Toledo Correctional Institution ("TCI"). On April 5, he sent by certified mail a letter containing six requests for public-records to Edmonson, who works as a warden's assistant and public-information officer at the Correctional Reception Center ("CRC"). Howson requested the following records:

> 1. Any and all Incident Report (DRC Form 1000) completed by Officer David Howson (OAKS 10182768)[1] or Officer Kyle Dougherty relating to an inmate who was found unresponsive in the bed area of B4 at CRC by Officer Howson and Dougherty between the dates of April 1, 2019 and March 1, 2021.
>
> 2. Any and all Incident Report (DRC Form 1000) completed by Officer David Howson between the dates of April 1, 2019 and March 1, 2021.

---

1. Although Howson was incarcerated at the time of his public-records request, he had previously been employed as a corrections officer by the Ohio Department of Rehabilitation and Correction.

3.  Any and all Use of Force ("UOF") Report(s) (DRC Form 2181) completed by Officer David Howson between the dates of April 1, 2019 and March 1, 2021, regardless of if it was a reactive, planned, or witness UOF.  When responding to this request, I ask that you include any additional DRC Form 2181 which was authored by any another [sic] CRC staff member relating to that particular incident (i.e. Officer Howson's partners' or responding staff DRC 2181 relating to that UOF) and included in the UOF Summary Packet, as well as any Conduct Report (DRC Form 4018) with respect to that particular incident.  Summarily, I am requesting *ALL* UOF forms and the accompanying documents contained in the packets when Officer Howson was involved in any UOF incident in any manner, throughout the entire duration of his employment with the Ohio Department of Rehabilitation and Correction ("ODRC").

4.  Any and all video footage captured by wall-mounted or handheld cameras, contained in a Use of Force Summary Packet, or otherwise known as [a] "packet" . . . when Officer David Howson was either an Officer utilizing force or otherwise involved in the response of the use of force in said incident (i.e. Howson was a responding officer who witnessed force, Howson was a camera-man on an extraction team) and created between April 1, 2019 and March 1, 2021.

5.  The entire personnel file for former Officer David Howson, to include any and all historical disciplinary actions, training, hiring/termination documents, staff mugshot sheet, and other similar documents, as ordinarily maintained by ODRC or CRC.

6. All e-mail or interoffice communications when either composed, copied, or otherwise received by a single or combination of any of the following ODRC employees: (1) Patricia Hertenstien, (2) Robert Nutter, (3) George Fredrick, (4) Nathan Harris, (5) Richard Daily, (6) David Howson, (7) James White, (8) any other employee of ODRC not named herein, who was employed by ODRC for any period of time between January 1, 2021 and January 1, 2022, when the subject or body of the correspondence pertains to, mentions, or is otherwise substantially about Mr. David Howson in any manner, and if the communication was created between the period of January 1, 2021 and January 1, 2022, regardless of the origin and manner [by] which the communication was sent. When responding to this request, please include any and all replies to the thread, as it is ordinarily held.

(Emphasis in original.)

{¶ 3} Howson requested digital copies of the records on a DVD. Edmonson received the letter on April 27, 2023. On May 30, Howson asked Derek Burkhart, a TCI staff member, to contact Edmonson about the status of the requests. According to Howson, Burkhart then emailed Edmonson, and she responded by telling Burkhart that she would get to Howson's requests "when she could."

{¶ 4} Howson filed this mandamus action on August 31, 2023, and his complaint alleges that he had received no response from Edmonson or any other official from CRC or the Ohio Department of Rehabilitation and Correction. He seeks copies of the records that he requested, as well as awards of statutory damages, court costs, and attorney's fees.

{¶ 5} Edmonson filed a motion to dismiss the complaint on September 25, 2023, arguing that Howson had failed to state a claim upon which relief could be

granted. Among other things, Edmonson asserted that with the exception of Howson's request for his personnel file, his records requests were overbroad and "did <u>not</u> sufficiently identify the records sought with reasonable clarity." (Underlining in original.) Edmonson's motion to dismiss was supported by an attached affidavit, in which she averred that she had responded to Howson's requests on July 24, 2023, providing him with a copy of his entire personnel file and denying each of the other requests with an explanation stating, "No records responsive. Request is overbroad." Edmonson further stated in her affidavit that she never received any clarifications or revised requests from Howson after her July 24 response.

{¶ 6} On October 5, Howson filed a memorandum in opposition to Edmonson's motion to dismiss, and he included an affidavit of his own. In his affidavit, he averred that he had been provided with a copy of his personnel file on September 21, 2023, after a TCI staff member received the file by email from Edmonson. Howson also stated in this affidavit that he had received no other response to his public-records requests, and he claimed that reading Edmonson's motion to dismiss was the first time he had learned of her assertion that any of his requests were overly broad.

{¶ 7} On November 29, this court denied Edmonson's motion to dismiss, issued an alternative writ, and set a schedule for the presentation of evidence and filing of briefs. 2023-Ohio-4259. Edmonson filed her evidence, which was limited to a copy of the same affidavit that she had previously submitted with her motion to dismiss. Howson filed a motion asking this court to deem the attachments to his complaint as evidence.

{¶ 8} Edmonson's merit brief includes an appendix containing a copy of an unsigned letter dated July 24, 2023, which she represents was her written response to Howson's requests. Howson subsequently filed his reply brief and a motion to strike Edmonson's letter. His motion argues that the letter was not properly

authenticated and also emphasizes that the letter was not included with Edmonson's evidence and was not submitted until after he had submitted his merit brief. Edmonson did not respond to Howson's motion to strike.

## II. ANALYSIS

### A. Evidentiary Motion

**{¶ 9}** In our November 29 alternative writ, we ordered the parties to file any evidence within 20 days. 2023-Ohio-4259. Howson did not file any evidence with this court, and instead, he filed a motion on December 12 asking us to "deem the attachments to Relator's Complaint as substantive evidence in this action." Edmonson did not respond to that motion.

**{¶ 10}** In *State ex rel. McDougald v. Sehlmeyer*, 2021-Ohio-666, ¶ 5-6, we granted a motion asking for the same relief, noting that "S.Ct.Prac.R. 12.06 provides that 'evidence shall be submitted by affidavits, stipulations, depositions, and exhibits' " and that "[t]he affidavit McDougald filed with his complaint qualifies as evidence under this rule," *id*. at ¶ 6.

**{¶ 11}** Here, the evidence included with Howson's complaint consists of his affidavit along with documents that Howson authenticated as "true and accurate cop[ies]." We observed in *McDougald* that it was "less clear" whether a document attached to the complaint was properly submitted as evidence when the relator did not authenticate that document in his affidavit, but we nonetheless considered the document because there was "no real dispute about [its] substance." *Id*. at ¶ 7. Here, Howson submitted an affidavit that authenticated all of the documents upon which he seeks to rely as evidence. We therefore grant his evidentiary motion.

### B. Motion to Strike

**{¶ 12}** We also grant Howson's motion to strike the letter attached to Edmonson's merit brief. This court's November 29 order granting an alternative writ provided the parties with 20 days to submit evidence to the court. 2023-Ohio-4259. Edmonson filed her evidence on December 6, but her brief, to which she

attached the July 24 letter, was filed on December 28—well past the time permitted by this court.

{¶ 13} In similar circumstances, this court has struck a party's evidence. *See State ex rel. Gil-Llamas v. Hardin*, 2021-Ohio-1508, ¶ 14 (striking evidence as untimely under the court's deadline for the submission of evidence when the evidence was filed without a motion for leave).

{¶ 14} We grant Howson's motion to strike and have not considered Edmonson's July 24 letter in our analysis of this case.

### C. Public Records Act

{¶ 15} Ohio's Public Records Act, R.C. 149.43, requires a public office to make public records available on request within a reasonable time. R.C. 149.43(B)(1). Mandamus is an appropriate remedy by which to compel compliance with the Public Records Act. R.C. 149.43(C)(1)(b); *see also State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 2006-Ohio-903, ¶ 6.

{¶ 16} To be entitled to the writ, Howson must demonstrate that he has a clear legal right to the requested relief and that Edmonson has a clear legal duty to provide that relief. *State ex rel. Cincinnati Enquirer v. Sage*, 2015-Ohio-974, ¶ 10. Howson bears the burden to plead and prove facts showing that he requested public records pursuant to R.C. 149.43(B)(1) and that Edmonson did not make the record available. *See Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 2020-Ohio-5371, ¶ 26. He also bears the burden of persuasion to show his entitlement to a writ of mandamus by clear and convincing evidence. *Id.*

### D. Howson Fails to Prove That Edmonson Did Not Respond to His Requests

{¶ 17} The parties dispute when Edmonson first responded to Howson's public-records requests. Howson alleges that he received no response until after this action was filed. Edmonson maintains that she responded to Howson's requests before he filed his complaint.

**{¶ 18}** Howson fails to meet his burden to show by clear and convincing evidence that Edmonson did not timely respond to his records requests. Edmonson maintains that she responded to Howson's requests on July 24, providing him with a copy of his entire personnel file and denying each of the other requests with an explanation stating, "No records responsive. Request is overbroad." For his part, Howson submitted an affidavit stating that he did not know why his requests were denied until he received Edmonson's motion to dismiss.

**{¶ 19}** At best, the conflicting affidavits are evenly balanced. Therefore, Howson is not entitled to a writ of mandamus based on his claim that Edmonson failed to respond at all to his public-records requests. *See State ex rel. Barr v. Wesson*, 2023-Ohio-3645, ¶ 13 (holding that the relator did not meet his burden to show that respondent had failed to respond to his records request prior to relator's filing his mandamus complaint when the parties' evidence was "[a]t best . . . evenly balanced").

### E. Howson's Requests Are Overbroad

**{¶ 20}** Our analysis does not end with the determination that Edmonson responded to Howson's public-records requests in July 2023. We now must determine if she properly denied five of the requests as overbroad.

**{¶ 21}** Edmonson argues that all but Howson's fifth request—which sought his personnel file—were overbroad and that she fulfilled her obligations by producing the personnel file and informing him that he needed to clarify his remaining requests. In response, Howson argues that his first, third, and fourth requests were not overbroad. He also argues in his reply brief that Edmonson's responses did not satisfy her obligations under R.C. 149.43(B)(2), which provides that when a request is denied as overly broad, "the public office or the person responsible for the requested public record . . . shall provide the requester with an opportunity to revise the request by informing the requester of the manner in which

records are maintained by the public office and accessed in the ordinary course of the public office's or person's duties."[2]

{¶ 22} Howson's merit brief does not address overbreadth as to his second or sixth requests. He has therefore waived his arguments with respect to those requests. *See State ex rel. Gregory v. Toledo*, 2023-Ohio-651, ¶ 8 (holding that a relator's failure to address a respondent's overbreadth argument concerning a specific request constituted a waiver of that issue). Because Howson has waived the issue of overbreadth for those requests, we consider only his first, third, and fourth requests.

{¶ 23} A public-records request may be properly denied if it is so "ambiguous or overly broad . . . that the public office or the person responsible for the requested public record cannot reasonably identify what public records are being requested . . . ." R.C. 149.43(B)(2). The person wishing to inspect or obtain copies of records has the responsibility to identify with reasonable clarity what records the person is seeking. *State ex rel. Data Trace Information Servs., L.L.C. v. Cuyahoga Cty. Fiscal Officer*, 2012-Ohio-753, ¶ 63.

{¶ 24} Howson's first request was for "[a]ny and all" incident-report forms completed by himself or another named officer "relating to an inmate who was found unresponsive" in a particular location at CRC. The request gave a date range of 23 months—from April 1, 2019, to March 1, 2021. His third request was for "[a]ny and all" use-of-force reports he had authored, as well as reports "authored by any [other] CRC staff member relating to that [same use-of-force incident]." Howson also requested "any Conduct Report . . . with respect to that particular incident." He attempted to summarize his third request by stating that he wanted

---

2. Howson also argues that Edmonson's overbreadth argument is improper because she raised it after his complaint was filed and failed to give him the opportunity to revise his requests. This argument fails because, as noted above, Edmonson's affidavit establishes that she did inform Howson that his requests were overbroad prior to his filing this action.

"*ALL* UOF forms and the accompanying documents contained in the packets when Officer Howson was involved in any [use-of-force] incident in any manner, throughout the entire duration of his employment with the Ohio Department of Rehabilitation and Correction." (Emphasis in original.) Howson's third request covered the same 23-month period as his first request. As for his fourth request, Howson sought "[a]ny and all video footage captured by wall-mounted or handheld cameras, contained in a Use of Force Summary packet" when Howson was either the officer using force or "otherwise involved" in any such incident during the same 23-month period.

{¶ 25} Public officials are not required to research records in order to determine which records contain selected information sought by the requester. *See State ex rel. Shaughnessy v. Cleveland*, 2016-Ohio-8447, ¶ 10. Accordingly, a public office may deny a request as overbroad if it "cannot reasonably identify what public records are being requested," R.C. 149.43(B)(2), or when "a request . . . seeks duplication of entire categories of documents," *State ex rel. Summers v. Fox*, 2020-Ohio-5585, ¶ 73. *See also State ex rel. Cleveland Assn. of Rescue Emps. v. Cleveland*, 2023-Ohio-3112, ¶ 17. The three requests at issue were properly denied as overbroad.

{¶ 26} Howson's first request asked Edmonson to review almost two years' worth of records to find incident reports relating to a single incident involving an unidentified inmate. While it is true that Howson's request was narrowed to a particular category of records (i.e., "DRC Form 1000") completed by specific corrections officers, it did not specify the person involved in the incident referenced in the request. This request therefore failed to identify the records sought with sufficient clarity. *Compare State ex rel. Dillery v. Icsman*, 2001-Ohio-193, ¶ 14 (request for "any and all" records in a police department's possession "containing any reference" to the requestor was overbroad) *with State ex rel. Carr v. London*

10

*Corr. Inst.*, 2015-Ohio-2363, ¶ 25-29 (request for communications from one person to a specific department in a prison over a two-month period was not overbroad).

**{¶ 27}** Similarly, in his third request, Howson asked for not only his own use-of-force reports but also any "accompanying documents contained in the packets when Officer Howson was involved in any UOF incident in any manner, throughout the entire duration of his employment with the Ohio Department of Rehabilitation and Correction." Howson's third request was overbroad because it asked not just for his reports, but for reports written by an uncertain number of other individuals. Howson's request, as worded, effectively required Edmonson to search *all* officers' use-of-force forms and "accompanying documents" from a 23-month period to determine if Howson was named in any of them.

**{¶ 28}** Howson's fourth request was similarly overbroad. In that request, he asked for "[a]ny and all video footage captured by wall-mounted or handheld cameras," but only if the footage (1) was contained in a "Use of Force Summary Packet" and (2) included Howson as either an officer utilizing force or an officer "otherwise involved in the response of the use of force" as either a witness or "camera-man." Thus, this request would have required Edmonson to review all use-of-force summary packets to determine if they contained video footage and search the video footage for any involvement of Howson.

**{¶ 29}** In *Shaughnessy*, 2016-Ohio-8447, this court held that a public-records request was overbroad because it required city officials to perform research for the requester "to identify a specific subset of [police] records containing selected information." *Id*. at ¶ 10. Howson's first, third, and fourth requests would require Edmonson to do the same here.

**{¶ 30}** Howson argues that Edmonson's responses to his records requests did not comply with her obligations under R.C. 149.43(B)(2), because in denying his requests as overbroad, she did not provide him with information about how the records are maintained and accessed. Edmonson's response to each of the

overbroad requests was "No records responsive. Request is overbroad." However, even if Howson is correct that Edmonson did not comply with R.C. 149.43(B)(2), this failure does not entitle Howson to a writ of mandamus because neither his complaint nor his merit brief asks this court to compel Edmonson to provide him with information about how the requested records are maintained or accessed. *See State ex rel. ESPN, Inc. v. Ohio State Univ.*, 2012-Ohio-2690, ¶ 12-15 (because relator's requested relief did not seek an order requiring respondent to explain its record-keeping system, relator was not entitled to relief beyond a finding that R.C. 149.43(B)(2) was violated).

### F. Statutory Damages, Court Costs, and Attorney Fees

{¶ 31} Howson also requests awards of statutory damages, court costs, and attorney fees. We deny these requests.

{¶ 32} Under R.C. 149.43(C)(2), the "requester shall be entitled to recover" statutory damages if (1) he submits a written request "by hand delivery, electronic submission, or certified mail," (2) the request "fairly describes the public record or class of public records," and (3) "a court determines that the public office or the person responsible for public records failed to comply with an obligation in accordance with [R.C. 149.43(B)]."

{¶ 33} With his argument limited to challenging the overbreadth of three of his six requests, Howson has failed to show that Edmonson did not comply with an obligation under R.C. 149.43(B) or that his requests "fairly describe[d]" the records he wanted, *see* R.C. 149.43(C)(2); *State ex rel. Griffin v. Sehlmeyer*, 2022-Ohio-2189, ¶ 13 (holding that a relator was not entitled to statutory damages when his request did not "fairly describe" the records he sought). Similarly, although Howson contends that Edmonson did not fully meet her obligations under R.C. 149.43(B)(2) by failing to inform him of how she keeps and accesses records, he is not entitled to damages, because he did not seek them for that violation. Howson's complaint does not allege a violation of division (B)(2), nor does he request relief

for a violation of that subdivision. This court has denied relief in similar circumstances in which a relator sought relief not pled in the complaint. *See State ex rel. Gilreath v. Cuyahoga Job & Family Servs.*, 2024-Ohio-103, ¶ 31; *see also ESPN*, 2012-Ohio-2690, at ¶ 13-15 (relator was not entitled to statutory damages because it did not seek them for respondent's failure to comply with R.C. 149.43(B)(2)).

{¶ 34} As to Howson's request for court costs, we deny that request because he filed an affidavit of indigency, and therefore there are no court costs to award. *See State ex rel. Mobley v. Powers*, 2024-Ohio-104, ¶ 35. As for attorney fees, Howson is representing himself and is therefore not entitled to such fees. *See State ex rel. Woods v. Lawrence Cty. Sheriff's Office*, 2023-Ohio-1241, ¶ 11.

### III. CONCLUSION

{¶ 35} We grant Howson's motions to treat the attachments to his complaint as evidence and to strike the letter attached to Edmonson's merit brief. We deny his request for a writ of mandamus as well as his requests for statutory damages, court costs, and attorney fees.

Writ denied.

_____

David R. Howson, pro se.

Dave Yost, Attorney General, and John H. Bates and Matthew Convery, Assistant Attorneys General, for respondent.

_____